FILED

03/03/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0206

DA 24-0206

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 42

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

FELICIA MARIE HINKLE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDC-22-242
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Britt Cotter, Cotter Law Office, P.C., Polson, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Mardell Ployhar, Assistant Attorney General, Helena, Montana

      Joshua Racki, Cascade County Attorney, Stephanie Fuller, Deputy County Attorney, Great Falls, Montana

Submitted on Briefs:  November 19, 2025

Decided:  March 3, 2026

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Felicia Marie Hinkle (Hinkle) appeals the Sentencing Order and Judgment entered by the Eighth Judicial District Court, Cascade County, after a jury trial, convicting her of the charges of criminal possession of dangerous drugs and criminal possession of drug paraphernalia. She challenges the District Court's denial of her motion to discharge the jury panel without conducting a hearing. Thus, we consider:

> *Whether the District Court erred by denying Hinkle's motion to discharge the jury panel without conducting a hearing.*

We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2     On April 15, 2022, after police found large quantities of illegal drugs and drug paraphernalia at Hinkle's home, she was charged with criminal possession of dangerous drugs and criminal possession of drug paraphernalia. Hinkle's trial was scheduled for August 22, 2023, but after an emergent hearing the previous day concerning the process of empaneling the jury, the District Court entered an order vacating the trial, noting that "it was undisputed that several serious errors in providing notice to jurors and, therefore, in empaneling the jurors have occurred in Cascade County." The District Court's order directed the Clerk of Court and Cascade County Sheriff to follow a list of detailed instructions for empaneling jurors for future trials. The District Court then rescheduled Hinkle's trial for November 28, 2023.

¶3     On November 20, 2023, Hinkle filed a motion to again discharge the jury, on the grounds that two people listed on the panel had moved from Cascade County. She

2

requested an evidentiary hearing to discuss her arguments and provided an affidavit by her attorney in support of her motion.

¶4 In its order, the District Court noted that the empaneling instructions outlined in its earlier order were completed by mid-October 2023, and that a hearing concerning the modified process that was thereafter utilized had been conducted before a different district judge in the Eighth Judicial District Court, Judge Kutzman, in *State v. Burden*, Cause No. DC-19-350, wherein Judge Kutzman had determined that the Clerk of Court and Sheriff had substantially complied with the governing statutes. Noting that Judge Kutzman had "made multiple well-reasoned findings of fact and conclusions of law," the District Court took judicial notice "of the record of proceedings at that hearing, including the testimony and evidence taken," reasoning that it was "not necessary to take the same evidence again concerning the process the Clerk and Sheriff now use to form the jury pool (the same 'pool' used in this case) or the Sheriff's service of jurors." The District Court stated that "[t]he statutory process used to form the pool necessarily results in a two year old list, with the predictable incidental result that some of the citizens on the list will have moved before the Clerk receives the list," from which individual case panels are drawn, and further reasoned:

> [T]his is a predictable but non-prejudicial and insubstantial consequence of the process of collecting names by the Secretary of State. However, the Court is satisfied that the process used to identify the large pool of jurors for the term . . . substantially complied with relevant statutes. The Court is further satisfied that the panel of potential trial jurors for this case was drawn in accordance with statutory requirements.

3

The District Court thus denied the motion to discharge the jury panel and did not conduct a hearing.[1]

¶5    After a jury trial on November 28, 2023, Hinkle was convicted of the charges. She appeals, challenging the District Court's failure to conduct a hearing on her motion to discharge the jury.

## STANDARD OF REVIEW

¶6    A trial court's decision to strike the venire is a question of law which we review for correctness. *State v. LaMere*, 2000 MT 45, ¶ 14, 298 Mont. 358, 2 P.3d 204 (citation omitted).

## DISCUSSION

¶7    *Whether the District Court erred by denying Hinkle's motion to discharge the jury panel without conducting a hearing.*

¶8    The jury pool selection process covers a considerable period of time due to detailed statutory procedures. *See* §§ 3-15-402 through -509, MCA (2021).[2] An objection to the

---

[1] In *Burden*, the court held a hearing regarding the Defendant's objection to the jury panel that arose when several jurors on the panel failed to appear for voir dire. The panel drawn for the case originally consisted of 93 potential jurors, 36 of which failed to appear for voir dire. At the hearing, the Clerk and the Sheriff testified about the actions taken by themselves and their staff in the jury selection process. In his conclusions of law, Judge Kutzman analyzed the statutes governing juror selection and service, and concluded that officials had not only complied with statutory requirements but also took additional permissible actions to contact jurors. Judge Kutzman reasoned that, "[t]he Clerk cannot reasonably be faulted for substantially complying with statutory requirements that do actually exist or for not substantially complying with statutory requirements that do not actually exist[,]" and denied the objection. *See* Appellant's Opening Brief, Appendix B, Order, *State v. Burden*, No. DC-19-350 (Mont. Eighth Judicial Dist. Nov. 10, 2023).

[2] Unless otherwise noted, all statutory citations are to the 2021 version of the Montana Code Annotated.

manner in which a jury panel has been selected or drawn must be raised by a motion to discharge the jury panel. Section 46-16-112(1), MCA. A motion to discharge must be made in writing and supported by an affidavit that "state facts that show that the jury panel was improperly selected or drawn." Section 46-16-112(2), MCA. "If the motion states facts that show that the jury panel has been improperly selected or drawn, it is the duty of the court to conduct a hearing." Section 46-16-112(3), MCA.

¶9 A person who is not a resident for at least 30 days of the county in which they are called for jury duty is not competent to act as a juror in said county. Section 3-15-301(2), MCA. Additionally, "[i]f the clerk of court is satisfied that a person whose name is drawn . . . has permanently moved from the county, . . . the person's name must be omitted from the jury list." Section 3-15-404(7), MCA.

¶10 On March 25, 2025, this Court decided *State v. Hillious*, 2025 MT 53, 421 Mont. 72, 565 P.3d 1218. The Court explained that, "we are not required to 'reverse every case where a violation occurs in the statutory process governing the formation of a trial jury.'" *Hillious*, ¶ 17 (quoting *LaMere*, ¶ 55). Rather, we apply a "substantial compliance" standard, which requires reversal only "if the lack of compliance affects the randomness and objectivity of the jury pool selection." *Hillious*, ¶ 17 (citation omitted). A substantial failure impacts a defendant's "right to a fair and impartial jury--which is what the statutes are designed to protect." *Hillious*, ¶ 18. Conversely, "[t]echnical departures from the jury selection statutes and violations which do not threaten the goals of random selection and objective disqualification do not constitute a substantial failure to comply." *Hillious*, ¶ 18

5

(citing *LaMere*, ¶ 58). Though decided prior to *Hillious*, a substantial compliance standard was presciently applied by Judge Kutzman in his analysis of the compliance with the jury selection statutes in *Burden*, and likewise applied by the District Court in this case.[3]

¶11 Hinkle argues that her motion to discharge the jury panel was sufficiently pled to necessitate a hearing because the inclusion of individuals in the pool who no longer lived in the county "was not a minor procedural defect but an alleged structural error affecting the fundamental integrity of jury selection." She takes exception to the District Court's reliance on *Burden*, because that case involved different summoning issues, and argues that the District Court violated § 46-16-112(3), MCA, by failing to conduct a hearing on her motion. The State answers that "Hinkle did not meet her burden to state facts showing that the jury was not properly selected," failing to allege a statutory violation in the jury panel selection process because "nothing in Mont. Code Ann. § 3-15-405 prevents a person who has moved from being included in the annual jury pool from which the panel is drawn." Further, the State argues that the District Court's taking of judicial notice of the *Burden* proceeding was appropriate.

¶12 The District Court considered Hinkle's objection concerning the two members of the pool who had moved from the county, the statutes, and the decision in *Burden*, to

---

[3] Subsequent to our decision in *Hillious*, the Legislature enacted 2025 Mont. Laws ch. 428, approved and effective on May 5, 2025, which revised the juror notification and selection process, and provided that, "[a] motion to discharge a jury must be founded only on a material departure from the law in respect to the selection, drawing, notification, or summoning of the jury panel." Section 46-16-112(5), MCA (2025). These changes were made applicable "to jury pools noticed on or after May 1, 2026," 2025 Mont. Laws ch. 428, § 7, and thus are not applicable in this case.

6

conclude that the objection here was a "predictable but non-prejudicial and insubstantial consequence of the process of collecting names," and that the process used "substantially complied with relevant statutes." We concur with the District Court, as Hinkle's objection did not rise to a substantial failure impacting a defendant's "right to a fair and impartial jury--which is what the statutes are designed to protect." *Hillious*, ¶ 18. The two individuals did not serve on the jury nor interact in any way with the selection process. While Hinkle is correct that a person who is not a resident of a county cannot serve on a jury in that county, that problem did not develop in this case, and, as the District Court stated, "[t]he appearance of those [non-county residents'] names in the jury term pool is, at worst, a non-prejudicial error." We see no reason here why it was error for the District Court to take judicial notice of the testimony of the Clerk of Court and the Sheriff in *Burden* about the process they had utilized following the court's earlier order, and thereafter enter its own conclusions of law based thereon, including application of an appropriate substantial compliance standard. Consequently, we agree with the State that, based upon the allegations set forth in the motion, the District Court did not err by failing to hold a hearing.

¶13 Affirmed.

/S/ JIM RICE

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON